# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| JOHN J. CARNEY, in his capacity as COURT-APPOINTED RECEIVER for HIGHVIEW POINT PARTNERS, LLC, et al.,<br>　　　Plaintiff,<br><br>　　　v.<br><br>HORION INVESTMENTS LTD., et al.,<br>　　　Defendants. | No. 3:13-cv-660 (SRU) |

## RULING ON MOTION TO DISMISS

This case is ancillary to a U.S. Securities and Exchange Commission ("SEC") enforcement proceeding against Francisco Illarramendi ("Illarramendi") for violation of federal securities laws. The United States District Court for the District of Connecticut created a receivership estate and appointed John J. Carney (the "Receiver") as receiver.[1] In this action, the Receiver filed a complaint[2] against numerous defendants to recover property for the benefit of the receivership estate. Those defendants are Piero Enrique Montelli Torres ("Montelli"), Inverplus Sociedad de Corretaje de Titulos Valores, C.A. ("Inverplus"), IVP Overseas Ltd. ("IVP") (collectively, the "Montelli Defendants"), Romeo Mikael Mouawad, Jespa Mawad de Mouawad, Miguel Antonio Mouawad Mawad, Tania Mouawad Mawad, Horion Investment Ltd., Grimsel Group Ltd. ("Grimsel"), and M. Holding S.A. ("M. Holding") (collectively, the

---

[1] The receivership entities include: Highview Point Partners; MK Master Investments LP; MK Investments, Ltd.; MK Oil Ventures LLC; the MK Group; Michael Kenwood Capital Management, LLC; Michael Kenwood Asset Management, LLC; MK Energy and Infrastructure, LLC; MKEI Solar, LP; MK Automotive, LLC; MK Technology, LLC; Michael Kenwood Consulting, LLC; MK International Advisory Services, LLC; MKG–Atlantic Investment, LLC; Michael Kenwood Nuclear Energy, LLC; MyTcart, LLC; TUOL, LLC; MK Capital Merger Sub, LLC; MK Special Opportunity Fund; MK Venezuela, Ltd.; and Short Term Liquidity Fund, I, Ltd.

[2] All references to the complaint refer to the First Amended Complaint (doc. # 9).

"Mouawad-Mawad Defendants"). The Receiver alleges that Montelli helped Illarramendi conceal the scheme and conspired with Illarramendi even after the SEC sued Illarramendi, assisting him in his attempt to circumvent the SEC's pending asset freeze. In exchange, the Receiver alleges, Montelli received or directed fraudulent transfers from receivership entities on his or his affiliates' behalf, and facilitated fraudulent transfers for the benefit of the Mouawad-Mawad Defendants.

Defendants Miguel Mouawad Mawad ("Mawad") and M. Holding move to dismiss the complaint, alleging inadequate service of process, lack of personal jurisdiction, lack of subject-matter jurisdiction, lack of standing, and forum non conveniens. Further, defendants argue that the Receiver's claims are time-barred and that the Receiver's common law claims are insufficiently pled. For the reasons stated below, defendants' motion to dismiss (doc. # 52) is granted in part and denied in part.

## I.     Standard of Review

### A.   Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party who seeks to invoke a court's jurisdiction bears the burden of establishing that jurisdiction. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). To survive a motion brought under Rule 12(b)(1), a plaintiff must allege facts demonstrating that the plaintiff is a proper party to seek judicial resolution of the dispute. *Id.* "When considering a party's standing, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Thompson*,

15 F.3d at 249 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). If a plaintiff has failed to allege facts supportive of standing, it is within the court's discretion to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact supportive of standing. *Id*.

B. <u>Lack of Personal Jurisdiction Under Rule 12(b)(2)</u>

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *See Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). A plaintiff may initially carry this burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). A plaintiff can make this showing through his "own affidavits and supporting materials," *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981), containing "an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Ball*, 902 F.2d 194, 197 (2d Cir. 1990)).

In resolving the personal jurisdiction issue, a court must "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). When deciding a motion to dismiss for lack of personal jurisdiction, the court may consider affidavits and other evidence submitted by the parties. *Ensign-Bickford Co. v. ICI Explosives USA, Inc.*, 817 F. Supp. 1018, 1026 (D. Conn. 1993) ("[T]he plaintiff must make a 'prima facie showing' through affidavits or

other evidence that the defendant's conduct was sufficient for the court to exercise personal jurisdiction.").

### C. Improper Venue Under Rule 12(b)(3)

"The same standard of review is applied to a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) as is applied to dismissals for lack of personal jurisdiction pursuant to Fed. R. Civ. P 12(b)(2)." *Marcus v. Am. Contract Bridge League*, 562 F. Supp. 2d 360, 362-63 (D. Conn. 2008) (citing *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir. 2005)). In defending against a motion to dismiss for improper venue, plaintiffs bear the burden of proving that venue is proper. *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001). When deciding a motion to dismiss for improper venue, courts may consider materials outside the pleadings. *See, e.g., New Moon Shipping Co., Ltd. v. Man B & W Diesel AG*, 121 F.3d 24, 26 (2d Cir. 1997). Pursuant to 28 U.S.C. § 1406(a), the court may transfer or dismiss the case if venue is not proper. Should the defendant prevail on its motion, the court still retains discretion to decline to dismiss the case in favor of a transfer to any district where the case could initially have been brought. *See id.* (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)).

### D. Service of Process Under Rule 12(b)(5)

"Under Rule 12(b)(5), a party may file a motion to dismiss due to insufficiency of service of process." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007) (citing Fed. R. Civ. P. 12(b)(5); *Greene v. Wright*, 389 F. Supp. 2d 416, 426 n.2 (D. Conn. 2005)). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Id.* (citing *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d

4

106, 110 (D. Conn. 1999)). "Once validity of service has been challenged, it becomes the

plaintiff's burden to prove that service of process was adequate." *Id.* (citation omitted).

### E. Failure to State a Claim Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed

"merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which

might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch*

*Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636,

639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true, draw all reasonable inferences in favor of the

plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007);

*Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the

speculative level," and assert a cause of action with enough heft to show entitlement to relief and

"enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also*

*Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and

*Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more

than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."

*Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is

nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

## II.    Background[3]

This is an action to recover receivership property that Illarramendi diverted in order to sustain his Ponzi scheme. The Receiver alleges that Mawad, M. Holding, and Horion received more than $71 million in fraudulent transfers from receivership entities. The Receiver alleges that Mawad and his family, often in concert with Illarramendi's childhood friend, Montelli, established shell companies to enrich themselves and the entities they control.

### A.   The Defendants

#### 1.   *Montelli*

Montelli is a Venezuelan public accountant who facilitated Illarramendi's scheme by assisting Highview Point Partners ("HVP") to secure investments by means of fraud. Montelli also controlled shell companies such as Naproad Finance, S.A. ("Naproad") and HPA, Inc. ("HPA"). According to Illarramendi, Montelli previously worked "closely" with Illarramendi and Frank Lopez ("Lopez"), a principal of HVP Partners and a defendant in another suit brought by the Receiver, while the three of them were employed by a major international bank.

#### 2.   *The Mouawad-Mawad Defendants*

Romeo Mouawad is a Venezuelan citizen and financier who operates an international brokerage firm in Venezuela. He owns, in whole or in part, and controls defendants M. Holding, Horion, and Grimsels. Jespa Mawad de Mouawad is his wife, and Miguel and Tania Mouawad

---

[3] All background information is taken from the First Amended Complaint, unless otherwise noted. Some of these alleged facts are disputed, but allegations in the complaint are accepted as true for purposes of the motion to dismiss.

Mawad are his children. Each of the four members of the Mouawad-Mawad family owns 25% of the shares of Horion, a British Virgin Islands shell corporation formed approximately two weeks before it received the first transfer from a receivership entity. M. Holding was incorporated in Belize in May 2009, approximately two weeks before Illarramendi and Montelli first attempted to transfer funds to M. Holding. At that time, Romeo Mouawad and Miguel Mouawad Mawad each owned 50% of its shares.

B.  The Scheme

The events that are the subject of this action occurred in connection with Illarramendi's attempts to cover up a massive trading loss, which began as early as October 2005. With the complicity of his associates, Illarramendi embarked on an elaborate scheme to hide the "hole" between the real assets held by the funds containing investor monies entrusted to Highview Point Partners, LLP ("HVP Partners") and the liabilities owed as a result of trying to conceal losses.[4] The scheme involved the use of offshore entities and bank accounts and a complex web of often poorly or falsely documented transfers, loans, and transactions with numerous persons. When the entire scheme was revealed, the "hole" amounted to more than $300 million.

C.  Related Proceedings

On March 7, 2011, the United States Attorney for the District of Connecticut filed an information against Illarramendi, charging him with wire fraud, securities fraud, investment adviser fraud, and conspiracy to obstruct justice. Illarramendi pled guilty and acknowledged as part of that plea that he had engaged in a scheme to hide from investors and creditors losses he

---

[4] The scheme is recounted in greater detail in four related cases. *See Carney v. Lopez, et al.*, 933 F. Supp. 2d 365 (D. Conn. 2013); *Carney v. Montes, et al.*, No. 3:12-cv-183 (SRU), 2014 WL 671263 (D. Conn. Feb. 21, 2014); *Carney v. Beracha, et al.*, 996 F. Supp. 2d 56 (D. Conn. 2014); and *Carney v. Marin, et al.*, No. 3:12-cv-181 (SRU), 2014 WL 1029911 (D. Conn. Mar. 17, 2014).

had incurred in a failed transaction, and that he had used money provided by new investors to the

HVP Partners funds to pay out returns he promised to earlier investors. He also admitted to

disregarding corporate formalities and commingling investments in various HVP Partners funds.

On June 14, 2011, the SEC began a civil enforcement action against Illarramendi and others,

alleging that they misappropriated investor assets in violation of securities laws. The SEC also

sought an order freezing the assets of those defendants and the appointment of a Receiver over

those assets. In 2011, U.S. District Judge Janet B. Arterton appointed John J. Carney as that

Receiver.

## III.    Discussion

The Receiver's complaint contains ten counts, of which eight are relevant here: Counts

One through Three allege statutory fraudulent transfer claims; Count Four alleges a common law

fraudulent transfer claim; Count Five alleges unjust enrichment; Count Six alleges conversion;

Count Nine brings an action for money had and received; and Count Ten seeks an accounting.[5]

Defendants Mawad and M. Holding move to dismiss the complaint for inadequate service of

process, lack of personal jurisdiction, lack of subject-matter jurisdiction, lack of standing, and

forum non conveniens. Further, defendants argue that the Receiver's claims are time-barred and

that he has insufficiently pled his non-statutory claims.

### A.    Service of Process

Mawad claims that he was never served, and that he cannot have been served because he

was in New York rather than in Florida on the date when service was allegedly made on him at

his home in Miami Beach. In support of those claims he offers the affidavit of his pilot, who

---

[5] Counts Seven and Eight, brought only against Montelli, allege participation in and aiding and
abetting a breach of fiduciary duty and conspiracy to breach fiduciary duty.

claims to have flown him from Florida to New Jersey a few days before the alleged service and back to Florida a few days after. Mawad also argues that he does not match the description that was sworn out by the process server, because the description in the process server's affidavit indicates that the man who was served had "brown" skin, but Mawad characterizes his own skin as fair. The Receiver responds with a more detailed affidavit, photographs of Mawad that the process server affirmatively identifies as the man he served, and the results of an investigation into the identity and whereabouts of Mawad's plane on the relevant days. Pursuant to an agreement with the Receiver, however, and in order to avoid jurisdictional discovery, Mawad filed a notice withdrawing the argument that he was not sufficiently served (doc. # 73). He nevertheless maintains the argument that Horion and M. Holding were not served, because on the date of service, he argues, he did not have any relationship with either company that would allow him to accept service on their behalf. Horion, in fact, no longer existed, because it was formed under the law of the British Virgin Islands and had been dissolved under that law a few months before service (and thus had no capacity to be served, nor to be sued). And though M. Holding continued to exist, Mawad and his father were no longer its shareholders or directors (those responsibilities had shifted to his mother and sister).

Under the Federal Rules of Civil Procedure, service can be made on a corporation by delivering a copy of the summons and complaint to an "officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). The Receiver argues that Mawad is a managing or general agent of both entities because with respect to both of them he has been "invested with powers of discretion" and could "exercise judgment in his duties, rather than being under direct superior control as to the extent of his duty and the manner in which he executes it." *Grammenos v. Lemos*, 457 F.2d 1067, 1073

(2d Cir. 1972) (citing 2 Moore, *Federal Practice* § 4.22 (2d ed. 1970)). The Receiver plausibly alleges that Mawad has enjoyed power of attorney (shared jointly with his father, mother, and sister) over Horion, and that M. Holding was established as a shell company specifically for the purpose of receiving fraudulent transfers on behalf of Mawad and his family. Whether both entities were controlled and operated by Mawad along with his family (and codefendants) as an integrated family unit is sufficiently factual to require discovery. So is the question whether any transfers of nominal ownership and control to his mother and sister, or any efforts to dissolve Horion, were, as the Receiver suggests, fraudulent attempts to avoid creditors.

The Receiver alleges that neither Horion nor M. Holding has a genuinely separate corporate identity, but rather that both are alter egos for Mawad and for the Mouawad-Mawad Defendants—that they are sham entities formed for the purpose of receiving fraudulent transfers and for concealing ownership and control of the funds. Mawad vigorously disputes those allegations, but the complaint pleads sufficient plausible facts to make a prima facie case that Horion and M. Holding are "mere shell[s], serving no legitimate purpose, and used primarily as an intermediary to perpetrate fraud or promote injustice." *De Leonardis v. Subway Sandwich Shops, Inc.*, 35 Conn. App. 353, 359 n.3 (Conn. App. Ct. 1994) (quoting *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.*, 187 Conn. 544, 557 (1982)). Whether as instrumentalities of Mawad and the Mouawad-Mawad Defendants, or as alter egos whose separate identities are a fiction, the Receiver has made a prima facie case for piercing the corporate veil, and I therefore cannot dismiss the complaint against the companies on the basis of inadequate service of process.

B. Personal Jurisdiction

The Receiver asserts that this court has personal jurisdiction over the defendants pursuant to 28 U.S.C. §§ 754 and 1692. Mawad and M. Holding argue that the federal receivership

statutes do not provide personal jurisdiction over them (or, by implication, the other defendants) because the Receiver has failed to allege that they hold any specific Receivership property within the United States.

Section 754 provides that:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall … be vested with complete jurisdiction and control of all such property with the right to take possession thereof.
>
> He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.
>
> Such receiver shall … file copies of the complaint and such order of appointment in the district court for each district in which property is located.

28 U.S.C. § 754. The defendants are correct that the complaint does not specifically identify any particularized Receivership property that is located within the several districts where the Receiver has complied with the filing requirements. But the Receivership property that the complaint alleges the defendants received is not some tangible, nonfungible object that absent particular allegations about location might just as well be in Caracas as Miami—it is cash, and many millions of dollars of it. And the complaint alleges that the defendants have an extensive and ongoing presence in the United States, which includes, among other things, millions of dollars of real estate holdings and multiple personal residences in Florida, where it alleges the Mouawad-Mawad Defendants reside at least part-time. Assuming for purposes of the present motion that those allegations are true, and drawing inferences favorable to the plaintiff, the pleadings contain plausible allegations of facts sufficient to infer that some Receivership property—which is to say, some Receivership cash, or some other property that was purchased with Receivership cash—is located in Florida, where the Receiver has complied with statutory

filing requirements, and that personal jurisdiction under the federal receivership statute is therefore proper.[6]

In addition to that statutory authority, an exercise of personal jurisdiction must comport with Due Process, but Mawad makes no constitutional argument that personal jurisdiction is improper apart from the bare assertion that the requirements of minimum contacts and reasonableness announced in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), are not met. But when, as here, the statutory authority for personal jurisdiction is derived not from a state long-arm statute but rather from a federal law that allows for national service of process, "a court should consider the defendant's contacts throughout the United States and not just those contacts with the forum." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F. 3d 135, 152 n.12 (2d Cir. 2001). *See also S.E.C. v. Bilzerian*, 378 F. 3d 1100, 1106 n.8 (D.C. Cir. 2004) ("[T]he requirement of 'minimum contacts' with a forum state is inapplicable where the court exercises personal jurisdiction by virtue of a federal statute authorizing nationwide service of process. In such circumstances, minimum contacts with the United States suffice." (citation omitted)); *Haile v. Henderson Nat. Bank*, 657 F. 2d 816, 824–26 (6th Cir. 1981) ("In an action where service of process is effected pursuant to a federal statute which provides for nationwide service of process, the strictures of *International Shoe* do not apply. . . . The process authorized by § 1692 is not 'extra-territorial' but rather nationwide. . . . As such, the minimum contacts analysis, as a limitation on state extra-territorial power, is simply inapposite."). The Receiver plausibly alleges that Mawad is at least a part-time resident and probable domiciliary of Florida,

---

[6] Mawad and M. Holding do not include arguments that section 1692 allows only *in rem* and not *in personam* jurisdiction, but they note that courts have disagreed on that question and they incorporate by reference the arguments made in a related case, *Carney v. Lopez, et al.*, 933 F. Supp. 2d 365 (D. Conn. 2013). The analysis of the question here does not differ from the analysis there, and to the extent that they raise those arguments by reference, I come to the same conclusion in both cases.

that he owns property there, and that he was served there. Mawad makes no argument that an exercise of personal jurisdiction would be fundamentally (and constitutionally) unreasonable or unfair, and under the facts alleged in the complaint, it is doubtful that such an argument would be availing. I conclude that the requirements for pleading personal jurisdiction have been met.

C.  Subject-Matter Jurisdiction and Standing

The defendants make several arguments that this court lacks subject-matter jurisdiction over the Receiver's claims because the Receiver lacks standing to bring them, including that the Receiver lacks standing under the Second Circuit's *Wagoner* rule,[7] and that it lacks standing under the Connecticut Uniform Fraudulent Transfer Act ("CUFTA") because it is not a "creditor" or was not a creditor at the time allegedly fraudulent transfers took place.[8] Those arguments are familiar ones, because the same or essentially similar arguments were raised by defendants in related cases brought by the Receiver. *See Carney v. Marin, et al.*, No. 3:12-cv-181 (SRU), 2014 WL 1029911, *4–*6 (D. Conn. Mar. 17, 2014) (holding that Receiver is a "creditor" under CUFTA); *Carney v. Montes, et al.*, No. 3:12-cv-183 (SRU), 2014 WL 671263, *6–*11 (D. Conn. Feb. 21, 2014) (holding that *Wagoner* rule does not block Receiver's claims and that Receiver is a "creditor" under CUFTA); *Carney v. Lopez, et al.*, 933 F. Supp. 2d 365, 378 (D. Conn. 2013) (discussing CUFTA requirement that claimants were creditors at the time alleged fraudulent

---

[7] *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("[W]hen a bankrupt corporation has joined with a third party in defrauding its creditors, the [bankruptcy] trustee cannot recover against the third party for the damage to the creditors.").

[8] The defendants also argue that this court does not have subject-matter jurisdiction over the Receiver's claims because the Receiver failed to obtain leave of the appointing court to bring them, as required by the doctrine of *Barton v. Barbour*, 104 U.S. 126 (1881), and its progeny. The defendants are simply and plainly mistaken: the Receiver did seek and receive such leave, as is evident on the docket of the SEC action. *See* SEALED ORDER Re Motion for leave to file, *SEC v. Illarramendi et al.*, No. 3:11-cv-78 (JBA) (D. Conn. May 8, 2013) (Doc. # 699). The Receiver points out that fact in its opposition memorandum, and the defendants do not mention it in their reply.

transfers took place and holding that Receiver's pleadings were sufficient with respect to that requirement). The arguments do not differ in significant respects here, and my analysis of them is the same here as it was in those cases.

The *Wagoner* rule provides that "when a bankrupt corporation has joined with a third party in defrauding its creditors," the bankruptcy trustee for that corporation lacks standing "to recover against the third party for the damage to the creditors." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991). It is similar to the affirmative defense of *in pari delicto*, but in the Second Circuit it functions as a prudential standing limitation. *See In re Optimal,* 813 F. Supp. 2d 383, 395 (S.D.N.Y. 2011). However, examining and adopting an approach taken by many courts, the Seventh Circuit Court of Appeals has held that a receiver for corporations dominated by a Ponzi scheme principal could assert fraudulent transfer claims against third parties because the receiver was acting on behalf of corporations that were instrumentalities in that scheme. *Scholes v. Lehmann,* 56 F.3d 750 (1995). The *Scholes* Court held that the receiver had standing to bring the fraudulent transfer claims—even though the corporations he represented were nominally involved in the wrongdoing—and declined to impute the corporation's bad acts to the receiver because to do otherwise would allow the "wrongdoer ... to profit from his wrong." *Scholes*, 56 F.3d at 754.

In *Eberhard v. Marcu*, 530 F.3d 122 (2d Cir. 2008)—which at the time of this writing remains the only Second Circuit case to opine on *Scholes*—relied on *Scholes* and a subsequent Seventh Circuit case, *Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274 (7th Cir. 1997), to distinguish between situations in which the receiver seeks to bring claims on behalf of a creditor of a transferor and those in which the receiver brings claims on behalf of a transferor for whom he was not appointed to bring claims. *See Eberhard*, 530 F.3d at 132–34. The *Eberhard* Court's

denial of standing to the receiver was limited to the second situation—where the receiver seeks
to bring claims on behalf of the transferor himself—and the Second Circuit adopted the
reasoning of *Scholes* that when transfers are made by corporations that are completely controlled
by the wrongdoer, "the transfers were, in essence, coerced." *Id.* at 132. The corporation then
becomes the creditor in the coerced transaction and a receiver for the coerced corporation has
standing to claw back the transfers. In the present case, the fraudulent transfer claims are brought
on behalf of receivership entities, which are creditors of the transferor, Illarramendi.

The defendants rely heavily on *In re Bernard L. Madoff Investment Securities LLC*, 721
F.3d 54 (2d Cir. 2013), in which the Second Circuit held (without citing *Eberhard* or *Scholes*)
that the *Wagoner* rule and the *in pari delicto* doctrine barred the Securities Investor Protection
Act trustee for Madoff's successor-in-interest from asserting claims on behalf of that successor-
in-interest and its customers. The *Madoff* Court held that the trustee in that case "[stood] in the
shoes of [the Madoff entity] and may not assert claims against third parties for participating in a
fraud that [the Madoff entity] orchestrated," *id.* at 64, and that it was "not possible … to separate
[the Madoff entity] from Madoff himself and his scheme." *Id.* at 64–65. The Court observed that
it had "no doubt that [the Madoff entity]—in whose shoes the [t]rustee [stood]—bore at least
substantially equal responsibility for the injuries" that the trustee sought to redress. *Id.* at 64 n.13
(quotation omitted). As I held in *Carney v. Montes*, "[t]hat decision does not apply here, where
the Receiver has been appointed to bring claims on behalf of receivership entities that do not
bear 'substantially equal responsibility' for the injuries the Receiver seeks to redress. In short,
*Madoff* represents a straightforward application of the *Wagoner* rule and the present case
represents a straightforward application of *Eberhard*." *Montes*, No. 3:12-cv-183 (SRU), 2014
WL 671263, at *7 n.8. Accordingly, in light of the *Eberhard* decision, the *Wagoner* rule does not

deny the Receiver standing to bring claims as receiver for the Receivership Entities. "In the Second Circuit, when transfers are made by a corporation that is dominated by the wrongdoer, a receiver appointed to recover assets for the receivership entity—rather than for a wrongdoer who manipulated the dominated entity—has standing to bring claims on the corporation's behalf." *Id.* at *9.

By the same reasoning, the Receiver has standing to bring claims under CUFTA, because he brings them on behalf of the receivership entities, which, as creditors of Illarramendi, have standing to bring the claims against the defendants. The Receiver properly alleges that the receivership entities became creditors of Illarramendi, as described in the analysis above, at the commencement of his fraudulent scheme. He also alleges that the fraudulent transfers at issue occurred approximately four years later, by May of 2009. The defendants' argument that the Receiver lacks standing under CUFTA because he is not a creditor or because he was not a creditor at the time the allegedly fraudulent transfers took place is therefore unavailing.

### D.  Forum Non-Conveniens

A district court may dismiss an action under the doctrine of *forum non conveniens* when it appears that a foreign forum would be more convenient, fair, or sparing of judicial resources. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). To determine whether *forum non conveniens* dismissal is appropriate, the court must apply a three-step inquiry. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). "First, the court must determine the degree of deference properly accorded the plaintiff's choice of forum." *Overseas Media, Inc. v. Skvortsov*, 277 F. App'x 92, 96 (2d Cir. 2008) (internal quotations omitted). Second, the court must determine if there is an adequate alternative forum. *Id.* Third, if an adequate alternative forum exists, then the court must weigh the relative convenience of each

forum by evaluating certain private and public interest factors and determining if they weigh in favor of dismissal. *Id.* "The *forum non conveniens* determination is committed to the sound discretion of the trial court," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981), and the defendant seeking dismissal bears the burden of demonstrating that the forum is not convenient. *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 74 (2d Cir. 1998).

The defendants argue that the Receiver's choice of forum should be afforded little deference, that Venezuela provides an adequate alternative forum, and that the balancing factors weigh in favor of dismissal; the Receiver, of course, argues the opposite at each of the three steps. I analyzed the same issue with respect to the same Receiver and similarly situated defendants in *Carney v. Beracha, et al.*, 996 F. Supp. 2d 56, 71–73 (D. Conn. 2014), and my analysis is the same in the present case. In *Beracha* I held that the Receiver's choice of a Connecticut forum was entitled to substantial deference, that Venezuela may be a adequate forum, and that the Receiver nevertheless had legitimate and substantial reasons for bringing the case here. Weighing the balance of interests, I concluded that the defendants in that case had not met their burden of showing that the balancing factors weighed in favor of dismissal. The same reasoning that applied there applies here:

> This case is part of a set of interconnected actions brought in the District of Connecticut to recover moneys resulting from a scheme that was carried out in great part in Connecticut. Second, removal of this ancillary proceeding to a foreign jurisdiction while the primary actions are before the court in Connecticut would unnecessarily complicate matters and increase costs for the Receiver and the Receivership estate, and, possibly, the defendants, in litigating these matters. It could also lead to inconsistent outcomes.

*Id.* at 73. For substantially the same reasons, I arrive now at the same conclusion as in the earlier case, and I hold that the defendants have not overcome their burden to show that the balance of

interests weighs in favor of Venezuela or that the Receiver's choice of forum should not be given substantial deference. The defendants' motion to dismiss for *forum non conveniens* is denied.

E. <u>Statute of Limitations</u>

The defendants argue that the Receiver's common law claims of fraudulent transfer (Count Four), unjust enrichment (Count Five), and conversion (Count Six) should be dismissed as untimely, because section 52-577 of Connecticut General Statutes provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of," and the allegedly fraudulent transfers in this case occurred in 2009, which is more than three years before the filing of the complaint. In his opposition memorandum, the Receiver withdraws his common law fraudulent transfer and conversion claims, but argues that unjust enrichment is an equitable claim, and that therefore no statute of limitations strictly applies to it. That argument accords with my holding in *Carney v. Lopez, et al.*:

> The unjust enrichment claim is equitable in nature and, thus, the court need not adhere to definitive statutes of limitation. *See Rossman v. Morasco,* 115 Conn. App. 234, 974 A.2d 1, *cert. denied*, 293 Conn. 923, 980 A.2d 912 (2009) ("Although courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are by no means obliged to adhere to those time limitations.") (citations omitted).

933 F. Supp. 2d at 386. The defendants acknowledge that earlier holding and indicate in a footnote that they move merely to preserve their argument. I come to the same conclusion now and deny the motion to dismiss for untimeliness with respect to the unjust enrichment claim. I do not examine the common law fraudulent transfer and conversion claims because they are withdrawn.

F.  Sufficiency of the Pleadings

The defendants argue that the Receiver has failed to plead claims under CUFTA, common law fraudulent transfer, and conversion. As stated above, the Receiver withdraws the latter two claims, leaving only the arguments on the sufficiency of the pleading of CUFTA claims for actual and constructive fraudulent transfer. The defendants make several arguments, but in essence they assert that the Receiver's allegations are conclusory and lacking sufficient factual basis, that the Receiver failed to allege fraudulent intent (which is required for actual but not constructive fraudulent transfer), and that he failed to allege that the transfers in question were part of Illarramendi's fraudulent scheme. None of those assertions or arguments is persuasive.

There is substantial overlap between the defendants' arguments with respect to the sufficiency of the pleadings under CUFTA and corresponding arguments addressed in *Carney v. Lopez, et al.*, 933 F. Supp. 2d at 379–83. In that case, I observed that "[a]ctual intent to defraud is presumed as a matter of law when the debtor is engaged in a Ponzi scheme because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors," *id.* at 379 (citation omitted), and I held that the Ponzi presumption applied to Illarramendi's scheme. As in that case, the "[d]efendants' strongest argument is that each particular transfer is not fraudulent simply because the totality of the enterprise was fraudulent," *id.* at 382 (internal quotation marks omitted), but I nevertheless cannot agree with the defendants that the Receiver has insufficiently pled CUFTA claims.

To prove actual fraudulent transfer under section 52-552e(a)(1) of the Connecticut General Statutes, the Receiver must ultimately prove (1) that a transfer of assets took place, (2) that the claim arose before that transfer took place, and (3) that the transferor intended to hinder, delay or defraud the creditor by making the transfer. The third element is met by the Ponzi

presumption; the first two are sufficiently pled. Claims of constructive fraudulent transfer under

section 52-552f(a) are similar, but rather than proving intent, plaintiffs must prove both that the

transferor did not receive "reasonably equivalent value in exchange for the transfer" and that he

"was insolvent at [the] time [of the transfer] or … became insolvent as a result of the transfer."[9]

The Receiver has plausibly alleged both elements, and moreover, as I noted in *Lopez*,

"[n]umerous courts have held that entities used to further Ponzi schemes are presumptively

insolvent." *Lopez*, 933 F. Supp. 2d at 381 (*citing In re Carrozzella & Richardson,* 286 B.R. 480,

486 (D. Conn. 2002); *Armstrong v. Collins,* 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010); *In re*

*Bernard L. Madoff Inv. Securities, LLC,* 458 B.R. 87, 118 (Bankr. S.D.N.Y.), *leave to appeal*

*denied,* 464 B.R. 578 (S.D.N.Y. 2011)).

       The Receiver does not argue, as the defendants suggest he does, that the transfers were

actually or constructively fraudulent merely because they were made by an entity engaged in a

Ponzi scheme. Rather, the Receiver specifically and plausibly alleges that the defendants

received transfers of tens of millions of dollars as part of Illarramendi's scheme, and that the

receivership entities received no value in exchange for those transfers. The defendants apparently

would like the Receiver to be somehow more specific about the receipt of no value, but the

allegations are about as specific as may be expected for an allegation of a non-event. The

allegations overall are specific and plausible, and if the defendants can argue that the transfers

were in fact made for value (which they properly have not done on the motion to dismiss), those

---

[9] Similarly, under section 52–552e(a)(2), the plaintiff can establish constructive fraudulent
transfer by proving the transfer was made "without receiving a reasonably equivalent value in
exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage
in a business or a transaction for which the remaining assets of the debtor were unreasonably
small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably
should have believed that he would incur, debts beyond his ability to pay as they became due."

arguments will involve factual issues that would be premature to address at this stage of the litigation.

**IV.    Conclusion**

For the reasons stated above, the defendants' motion to dismiss is denied with respect to all claims except common law fraudulent transfer and conversion (Counts Four and Six), which the Receiver withdraws.

It is so ordered.

Dated at Bridgeport, Connecticut, this 12th day of May 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge